IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CARMEN RACHAEL BROWN,

Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

Defendant.

Case No. 3:13-cv-01832-HZ

OPINION & ORDER

TIM D. WILBORN
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137

RICHARD A. SLY
Attorney at Law
209 S.W. Oak Street, Suite 102
Portland, Oregon 97204
Attorneys for plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
RONALD K. SILVER
Assistant United States Attorneys
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

LARS J. NELSON
Office of General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
Attorneys for defendant

HERNANDEZ, District Judge:

Carmen Brown brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Title XVI Social Security Income ("SSI") and Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). This Court has jurisdiction under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For the following reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

**BACKGROUND**

Ms. Brown was born on March 21, 1965. Tr. 40, 199, 207. She graduated from high school and later received certification as a nursing assistant. Tr. 40, 260. Ms. Brown worked previously as a deliverer, order filler, bench assembler, and window cleaner. Tr. 76-77, 261.

On December 22, 2009, Ms. Brown applied for DIB and SSI, alleging disability as of May 23, 2008, due to an on-the-job neck injury. Tr. 199, 207, 255, 259. After her applications were denied initially and upon reconsideration, Ms. Brown requested a hearing before an administrative law judge ("ALJ"). Tr. 20, 145-65, 168-69, 178-88. On November 29, 2011, a hearing was held before ALJ Paul Robeck, at which Ms. Brown was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 35-98. On December 16, 2011, the ALJ issued a decision finding Ms. Brown not disabled within the meaning of the Act. Tr. 20-28. After the Appeals Council denied her request for review, Ms. Brown filed a complaint in this Court. Tr. 2-10.[1]

[1] The record before the Court constitutes over 700 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

## SEQUENTIAL DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the Act. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The initial burden of establishing disability rests upon the claimant. Id.; Yuckert, 482 U.S. at 146 n.5. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner. Tackett, 180 F.3d. at 1100.

At step one, the Commissioner determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the Commissioner evaluates if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the Commissioner resolves whether the severe impairment meets or equals a "listed" impairment in the regulations. If the impairment is determined to meet or equal a listed impairment, the claimant is presumptively disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

At step four, the Commissioner considers whether the claimant can still perform "past relevant work." If the claimant can perform such work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); Yuckert, 482 U.S. at 141. At step five, the burden shifts to the Commissioner to show that the claimant can perform other work existing in significant numbers in the national or local economy; if the Commissioner cannot meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Tackett, 180 F.3d at

1099. Conversely, if the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g); Tackett, 180 F.3d at 1099.

**THE ALJ'S DECISION**

At step one of the sequential analysis outlined above, the ALJ found that Ms. Brown had not engaged in substantial gainful activity since May 23, 2008, the alleged onset date. Tr. 22. At step two, the ALJ determined that Ms. Brown had the following severe impairments: "cervical radiculopathy, very mild median neuropathy of the right wrist, cervical strain, and small left paracentral disc protrusion at L5-S1 with spondylosis." Id. At step three, the ALJ found that Ms. Brown's impairments, either singly or in combination, did not meet or equal the requirements of a listing. Tr. 23.

Because Ms. Brown did not establish presumptive disability at step three, the ALJ continued to evaluate how her medical impairments affected her ability to work. The ALJ resolved that Ms. Brown had the residual functional capacity ("RFC") to perform "less than the full range of sedentary work," as defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a):

> [s]he can lift and carry ten pounds frequently and occasionally; she can stand and walk for two of eight hours; she can occasionally reach overhead; she can occasionally push/pull overhead bilaterally; she can occasionally climb ladders, ropes and scaffolds; she can occasionally crawl; she should avoid jobs that require[e] awkward or stationary neck positions; and she requires a sit/stand option.

Tr. 24.

At step four, the ALJ found that Ms. Brown could not perform her past relevant work. Tr. 27. At step five, the ALJ determined that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national and local economy that Ms. Brown could perform despite her impairments, such as charge-account clerk and call-out

operator. Tr. 28. Accordingly, the ALJ concluded that Ms. Brown was not disabled within the meaning of the Act. Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Bray v. Comm'r of the Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla, but less than a preponderance." Id. (citation and internal quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh the evidence that supports and detracts from the Commissioner's findings. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). Where the evidence can support either a grant or a denial, the court may not substitute its judgment for that of the Commissioner. Id. (citation omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the court cannot affirm the Commissioner's decision upon reasoning the ALJ did not assert in denying the claimant benefits. Bray, 554 F.3d at 1225–26 (citation omitted).

## DISCUSSION

Ms. Brown argues that the ALJ erred by: (1) failing to include all of the limitations assessed by Darrell Brett, M.D., in the RFC; (2) discrediting her subjective symptom statements; (3) rejecting the lay witness testimony of Patrick Balcom; and (4) finding her not disabled at step five based on an insufficient RFC and invalid VE testimony.

**I. Dr. Brett's Opinion**

Ms. Brown contends that the ALJ failed to include all of Dr. Brett's assessed limitations into the RFC, despite fully crediting his opinion. Specifically, she asserts that the ALJ's RFC is deficient because it includes no limitation regarding her inability to "perform any repetitive . . . exertion with the upper extremities." Pl.'s Opening Br. 10 (citing Tr. 379). According to Ms. Brown, "crediting Dr. Brett's opinion that [she] should not perform any repetitive exertion with the upper extremities, i.e. reaching, handling, and fingering, establishes that there is a significant erosion of the sedentary occupational base of which the medical-vocational rules take administrative notice." Id. at 13 (emphasis removed).

Ms. Brown initiated care with Dr. Brett, a neurologist, after she sustained a traumatic neck injury in May 2008 that resulted in "significant disc pathology mainly at C5-6 and C6-7." Tr. 378. Initially, Dr. Brett was concerned that surgery was indicated, however, after obtaining a myriad of objective test results, which were essentially normal, he stated that "there is little [he could] offer her from a neurological viewpoint" and released her back to work "in a modified capacity" – i.e. no "lift[ing] or carry[ing] more than 35 lbs." Tr. 375-76. Approximately one year later, in June 2009, Dr. Brett "reassessed [Ms. Brown's] neck and arm complaints." Tr. 379. Although he opined that Ms. Brown was "subjectively and objectively unchanged from her prior assessment," the doctor nonetheless outlined additional limitations: "[s]he is encouraged to continue . . . with conservative measures [and] she is medically stationary with a moderate permanent disability [such that] she should not lift or carry more than 10 lbs., perform any repetitive or heaving exertion with the upper extremities, or maintain any awkward or stationary neck positions that aggravate her pain." Id.

The ALJ gave "[g]reat weight" to Dr. Brett's opinion because "[h]is assessment of [Ms. Brown's] limitations is consistent with the objective medical evidence." Tr. 26. As such, in the corresponding RFC, the ALJ restricted Ms. Brown, in relevant part, to work involving lifting and carrying no more than ten pounds, occasional[2] overhead reaching and pushing/pulling, and no awkward or stationary neck positions. Tr. 24.

Thus, contrary to Ms. Brown's assertion, the ALJ did not implicitly reject certain facets of Dr. Brett's opinion. As both parties acknowledge, neither the Commissioner's regulations nor the Dictionary of Occupational Titles ("DOT") include a definition for the term "repetitive." Def.'s Resp. Br. 14; Pl.'s Opening Br. 15. The ALJ was therefore required to translate Dr. Brett's report into concrete functional limitations in the RFC: "it is the responsibility of the ALJ, not the claimant's physician, to determine [the RFC] and the ALJ's findings of RFC need not correspond precisely to any physician's findings." Davis v. Astrue, 2012 WL 4005553, *9 (D.Or. June 12), adopted by 2012 WL 3614310 (D.Or. Aug. 21, 2012) (citations and internal quotations omitted); see also Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ is responsible for resolving ambiguities in the records and translating the claimant's impairments into concrete functional limitations).

That is precisely what transpired here. The ALJ reasonably resolved that limiting Ms. Brown to occasional overhead reaching, pushing, and pulling was sufficient to account for Dr. Brett's restriction to no heavy exertion or repetition with the upper extremities, especially in light of the fact that sedentary work generally entails the exertion of "a negligible amount of force." DOT, Appx. C, available at 1991 WL 688702; Tr. 88-89; see also Stark v. Astrue, 462

---

[2] "Occasional" means up to one-third of an eight-hour workday. DOT, Appx. C, available at 1991 WL 688702.

Fed.Appx. 756, 756-57 (9th Cir. 2011) ("[t]he ability to engage in frequent reaching and handling is not clearly inconsistent with the inability to engage in excessive or repetitive use of the hands") (citation omitted); Burch, 400 F.3d at 679 (ALJ's reasonable interpretation of the record must be upheld). Moreover, this limitation is consistent with the other evidence of record. See, e.g., Tr. 69, 104-05, 127-28, 375, 379, 383, 393, 600.

Finally, to the extent Ms. Brown maintains that crediting Dr. Brett's upper extremity restriction significantly erodes the sedentary occupational base of the Medical Vocational Guidelines, such that a finding of disability is required, her argument is unavailing. Ms. Brown's position is based on the flawed premise that a limitation in the upper extremities, like the one identified by Dr. Brett, precludes all work involving arms, hands, and fingers. See Pl.'s Opening Br. 15 ("'[m]ost unskilled sedentary jobs require good use of the hands and fingers'") (quoting SSR 96-9p, available at 1996 WL 374185). Yet Dr. Brett's opinion is explicitly limited to Ms. Brown's "upper extremities" – i.e. her arms. Tr. 379; see also Tr. 383 (Dr. Brett stating that Ms. Brown need only avoid "any repetitive or heavy exertion with her arms"). Such a restriction says nothing about Ms. Brown's ability to utilize her hands and fingers. As Dr. Brett acknowledged, Ms. Brown's "[c]ervical range of movement in unimpaired" and "her gait is quite normal without Rombergism," "[t]here are no long tract findings to suggest myelopathy," "[t]here is no evidence of significant nerve impingement or disc herniation," "[n]erve conduction studies show very mild median neuropathy at the wrist," "electrophysiologic testing on the right is within the normal range," and "no objective neurologic deficit [is indicated] with preserved strength, sensation and myotatic reflexes, and no wasting or faciculations." Tr. 375, 379. In other words, there was no objective medical evidence at the time of Dr. Brett's assessment establishing a

limitation in Ms. Brown's hands or fingers, and no such evidence has been generated in the intervening period. As a result, the ALJ did not assess Ms. Brown at step two with any medically-determinable severe impairment relating to the hands or fingers, and Ms. Brown does not allege reversible error on this basis. Tr. 22-23; see generally Pl.'s Opening Br.; Pl.'s Reply Br.

In sum, Ms. Brown's argument regarding a significant erosion of the sedentary occupational base, which is contingent upon hand and/or finger limitations, is without merit. Her assertion that the ALJ's RFC, and, by extension, the VE's testimony, is inconsistent with Dr. Brett's report and the DOT is equally without merit. The ALJ's decision is affirmed as to these issues.

**II. Plaintiff's Credibility**

Ms. Brown also asserts that the ALJ neglected to provide a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom testimony regarding the severity and extent of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's

testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, Ms. Brown testified that she was disabled due to pain in her back, neck, feet, and right shoulder. Tr. 44-48, 51, 55. As the hearing continued, she endorsed additional impairments, claiming that she had previously forgotten about those conditions when answering the ALJ's direct questions. Tr. 55, 58-60, 79, 95-96. She stated that she lives with her boyfriend, his daughter, and her own two children. Tr. 39. As for as daily activities, Ms. Brown explained that she drives her children to and from school, and then does "[n]ot too much" else, although she later admitted to occasionally helping with homework or attending after-school activities. Tr. 49, 56-57.

After summarizing her hearing testimony, the ALJ found that Ms. Brown's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that her "statements concerning intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." Tr. 24. In support of this finding, the ALJ reasoned that the lack of corroborating medical evidence, as well as Ms. Brown's activities of "working in her back yard and scrubbing floors," undermined her subjective symptom statements. Tr. 24-26.

Specifically, the ALJ found "[t]he objective medical evidence [does] not support the severity of limitations [Ms. Brown] has alleged." Tr. 26. "[W]hether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, however, "an ALJ cannot

reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." Lingenfelter, 504 F.3d at 1040 (citations omitted). In this case, substantial evidence supports the ALJ's determination. Critically, the objective medical evidence does not reveal the presence of any significant or severe condition. As discussed above, Dr. Brett remarked that, with the exception of very mild medial neuropathy at the wrist and a chronic cervical strain, for which conservative measures were indicated, Ms. Brown's medical findings were essentially normal. Tr. 375, 379-80, 664. Additional imaging revealed mild findings. Tr. 337-44, 393, 499, 528-32, 559-61, 643-44, 728. Ms. Brown has also consistently demonstrated upon examination full strength in her arms, a full range of motion, and a normal gait. Tr. 289, 295, 330-31, 407, 452-53, 457, 506, 516, 546-47, 633, 644, 658, 676, 686, 704. There are even treatment records where Ms. Brown reported no back pain. See, e.g., Tr. 669, 676.

Nevertheless, because the ALJ cannot rely exclusively on the lack of corroborating medical evidence in finding Ms. Brown not fully credible, he was required to articulate another legally valid reason supported by substantial evidence. Here, in addition to the lack of supportive medical findings, the ALJ found that plaintiff's ability to scrubs floors and trim vegetables contravened her subjective symptom testimony. Tr. 26; see also Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (daily activities may serve as a basis for discrediting a claimant where they "are transferable to a work setting" or "contradict claims of a totally debilitating impairment"). The ALJ's determination ignores the fact that Ms. Brown endorsed severe pain after engaging in such conduct. See Tr. 406 (Ms. Brown complaining of pain in her neck and right hand three days after "[w]ork[ing] in her back yard . . . trimm[ing] her vegetable plants"),

501-07 (Ms. Brown reporting "severe lumbar back pain that radiates down the left side of her leg" the day after she "was down on the floor . . . scrubbing [and] bending over for several hours"). While these activities exceed the RFC, as they entail repetitive use of the upper extremities and awkward neck positions, the ALJ nevertheless impermissibly mischaracterized the record in determining that an inconsistency existed. See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" such that it did not support an adverse credibility finding).

Accordingly, the ALJ improperly rejected Ms. Brown's subjective symptom testimony. Because this error was prejudicial to Ms. Brown and therefore not harmless, the ALJ's credibility finding is reversed.

## III. Lay Witness Testimony

Ms. Brown next asserts that the ALJ neglected to provide a germane reason to reject the lay testimony of her boyfriend, Mr. Balcom. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted). "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id. (citations omitted).

Mr. Balcom testified at Ms. Brown's November 2011 administrative hearing. He reported performing all of the household chores because Ms. Brown was in too much pain and regularly dropped glasses when loading the dishwasher. Tr. 62-65. He also testified that he does most of

the driving and grocery shopping because Ms. Brown "doesn't feel safe [or] have confidence." Tr. 66-67. However, because he works outside of the home for approximately twelve hours per day, he stated that he does not know what Ms. Brown does beyond "get[ting] up [in the morning] and mak[ing] herself breakfast and whatnot." Tr. 64-66.

The ALJ gave "[l]imited weight [to] Mr. Balcom's testimony" because it was inconsistent with the objective medical evidence and Ms. Brown's ability to trim vegetables and scrub the floor. Tr. 26-27. "[I]nconsistency with or lack of corroboration by the medical record is [alone] a germane reason to discredit third-party statements." Griffith v. Colvin, 2014 WL 1303102, *3 (D.Or. Mar. 30, 2014) (citations omitted); see also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence") (citation omitted).[3]

Substantial evidence supports the ALJ's conclusion concerning this issue. As discussed above, Ms. Brown's objective medical findings were largely mild, such that surgery was not indicated; her doctors instead referred her to conservative measures such as physical therapy, exercise, gentle stretches, and acupuncture. Tr. 289, 295, 330-31, 337-44, 375, 379-80, 393, 407, 452-53, 457, 499, 506, 516, 528-32, 546-47, 559-61, 633, 643-44, 658, 664, 676, 686, 728. The ALJ's reliance on Ms. Brown's ability to scrub the floor and trim vegetables was harmless error because another legally valid reason, supported by substantial evidence, exists for discrediting Mr. Balcom's statements. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.

[3] Ms. Brown relies on Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011), to assert that an ALJ may not discredit lay testimony because it is not supported by the medical record. Taylor's holding was premised on Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009). Taylor, 659 F.3d at 1234. As this Court recently explained, however, "the basis for the holdings in Smolen and Bruce that an ALJ may not reject lay testimony for being unsupported or uncorroborated by the medical evidence, is no longer in effect." Glover v. Astrue, 835 F.Supp.2d 1003, 1012-14 (D.Or. 2011) (citations omitted).

2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless). The ALJ's decision is upheld as to the lay witness testimony.

**IV. RFC and Step Five Finding**

Lastly, Ms. Brown contends that the ALJ erred at step five by: (1) failing to specify the frequency of her need to alternate between sitting and standing in accordance with Social Security Ruling 96-9p; and (2) relying on VE testimony that did not clearly identify a significant number of jobs in the national or local economy that she could perform despite her inability to engage in awkward or stationary neck positions.[4]

**A. Insufficient RFC**

Where the need to alternate between sitting and standing "cannot be accommodated by scheduled breaks and a lunch period," the ALJ's RFC "assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, available at 1996 WL 374185. Courts within the Ninth Circuit have held that a "sit/stand option" in the RFC adequately satisfies this ruling. See Buckner-Larkin v. Astrue, 450 Fed.Appx. 626, 627 (9th Cir. 2011) (affirming the ALJ's decision where the claimant's RFC "included a sit-stand option, which is most reasonably interpreted as sitting or standing 'at-will'"); Swofford v. Comm'r Soc. Sec. Admin., 2013 WL 3333063, *6 (D.Or. July 1, 2013) (same); Rowland v. Colvin, 2013 WL 5530611, *11 (D.Or. Sept. 25, 2013) (same).

[4] Ms. Brown also contends that the ALJ erred at step five by failing to include limitations endorsed by Mr. Balcom and Dr. Brett in the dispositive hypothetical question posed to the VE. Because the ALJ properly evaluated Mr. Balcom's third-party statements and the medical opinion of Dr. Brett, Ms. Brown's argument, which is contingent upon a finding of harmful error in regard to these issues, is unpersuasive. Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Stubbs–Danielson, 539 F.3d at 1175-76.

The Court finds these cases persuasive and adopts their reasoning as its own. Therefore, the ALJ did not err in regard to this issue.

**B. VE's Testimony**

The RFC is the most that a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. Limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). In other words, "[i]n order for the VE's testimony to constitute substantial evidence, the hypothetical question posed must consider all of the claimant's limitations [that are] supported by substantial evidence," such as those set forth in the credited medical testimony. Trinchere v. Astrue, 2008 WL 4395283, *8 (C.D.Cal. Sept. 3, 2008) (citations and internal quotations omitted).

At the hearing, the ALJ engaged in the following exchange with the VE:

> ALJ: [A]ssume a hypothetical individual with the same age, education, [RFC,] and work background as [Ms. Brown.] Are there jobs available in the national or regional economy that such a person could perform?
>
> VE: Well, there are sedentary, unskilled jobs in the economy. The types of things I was thinking of would include something such as a charge-account clerk, or maybe a call-out operator . . . a lot of times, that's attending a computer screen as well as potentially being on the phone. A lot of times, they have headsets, so therein lies the – looking at the computer screen, and keeping track of those sorts of things, and doing keyboarding, whether that would be considered awkward – I mean, it wouldn't be that the person couldn't move, but whether that's considered an awkward neck position or not is really the question . . .

ALJ: [M]y interpretation of that is that it would have to be – when [Dr. Brett] says awkward, it'd almost have to be a very unusual, unnatural position to be in . . . That, I don't think is the problem with this.

VE: Okay.

ALJ: [I]f those jobs require looking at a computer screen pretty much all day long, that probably would be covered within that restriction.

VE: That it would preclude it, or [it] would be acceptable?

ALJ: It would be precluded.

VE: Well, there's not a whole lot left. Again, there are some sedentary, unskilled jobs, but again, like some of the assembly jobs are where you have to, you know, be looking, and reaching, and those sorts of things at the same time, many of the sedentary jobs required utilization of a computer, so if the awkward neck situation is precluded from those things, I don't have a whole lot.

ALJ: Yeah. Not that awkward, but the stationary neck.

VE: The stationary.

ALJ: Because the awkward – the way I interpret that is it's going to have to be an unusual job. It's going to have to be – what I meant by awkward – or the way I'm interpreting what the doctor said was that the neck for a job would have to be in a usually – unusual or unnatural position . . . you know, like you to be horizontal all day.

VE: [R]ight.

ALJ: So, I don't think that restriction is going to apply to the jobs mentioned –

VE: Okay.

ALJ: – but if you have to be basically be looking at a screen all day, then the stationary – the prohibition against stationary neck movement would preclude that job . . . Do you agree?

VE: Well, many of the jobs that I'm thinking of – it isn't that you can't look away from the screen, but many of the jobs when you're gathering information, say like a call-out operator or a charge-account clerk, you're accessing information and it would require the ability to maintain a pretty regular gaze, and –

> ALJ: Okay. So, let's just assume for the sake of argument that for the time being that that one's off the table . . . You say that doesn't leave much. What does it leave?
>
> VE: Well, I don't really have a lot . . . Given all that, no, I don't think I have anything that's significant and substantial.
>
> ALJ: Okay, and back to the [call-out operator] . . . does the neck have to be pretty much looking at the screen most of the day in that job?
>
> VE: Well, most of the day . . . it may be the conflict not with the awkward, as you clarified, but with the stationary . . .
>
> ALJ: If you were able to get up and down with the headset, you could move the position of your neck [to] look at the screen, right? . . . And if that were the case, then that job would be available.
>
> VE: Well again, I think it's to a matter of a degree . . . They usually have headsets because it makes them most productive, and they're not like, strapped to the chair or anything, but they have to maintain the work station . . .

Tr. 77-85.

The Court finds the VE's aforementioned equivocal testimony insufficient to support the ALJ's finding that Ms. Brown was not disabled under the Act. Critically, it is unclear from this interchange whether a significant number of representative occupations exist in the national or local economy when Dr. Brett's assessed limitation of no stationary or awkward neck positions is credited. The VE's noncommittal testimony is, in part, attributable to the fact that the ALJ did not precisely define the terms "awkward" and "stationary." Furthermore, several of the ALJ's queries were not framed in an open ended manner, such that the ALJ at times appeared to be instructing the VE how to respond instead of allowing him to independently testify based on his vocational expertise. See, e.g., Tr. 80-84. This, combined with the fact that the VE never actually stated that an individual with the inability to look at a computer screen for most of the day could perform the positions of charge-account clerk and call-out operator, renders the ALJ's step five

finding unsupported by substantial evidence. See Durkee v. Astrue, 2012 WL 3150587, *3-7 (C.D.Cal. Aug. 2, 2012) (remanding the ALJ's decision for further proceeding where the VE's testimony was ambiguous regarding whether there were "any light jobs [the claimant could] perform"). The ALJ's step five finding is reversed.

**V. Remand**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138-39 (9th Cir. 2011) (citation omitted). However, the court may not award benefits "unless [the record demonstrates that] the claimant is, in fact, disabled." Id. at 1138. Pursuant to the discretionary credit-as-true doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Id.; Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

As addressed herein, the ALJ committed harmful legal error by discrediting Ms. Brown and relying on the VE's inconclusive testimony. While the ALJ did not articulate these reasons in his opinion, the record evinces that Ms. Brown made numerous inconsistent statements and repeatedly failed to follow her doctors' recommendations. See Burch, 400 F.3d at 680-81 (inconsistent statements and the failure to follow prescribed medical treatments are clear and

convincing reasons to find a claimant not credible). For instance, both Ms. Brown and Mr. Balcom testified at the hearing that she "can't do any kind of house work," including laundry. Tr. 44, 63. Yet the record demonstrates that she was engaging in activities beyond those endorsed at the hearing. See Tr. 612 (Ms. Brown stating to a medical provider in November 2011 that her laundry machine broke, such that she had to go to the Laundromat and do her laundry there over the course of several hours; she did not report any back pain at that time); see also Tr. 420, 427, 514, 556, 676. In addition, Ms. Brown's medical providers repeatedly counseled her to engage in gentle stretching, exercise, physical therapy, and/or acupuncture to treat her back and neck pain. See, e.g., Tr. 407, 518, 545, 547, 600, 633, 688, 696, 702. With the exception of one physical therapy treatment note,[5] and two references to her walking, there is no evidence in the record before the Court evincing that Ms. Brown was compliant with her doctors' orders. Tr. 549, 556, 650. In light of these ambiguities in the record, especially in conjunction with the VE's equivocal testimony, the Court declines to credit Ms. Brown's testimony as true and instead remands this case for further proceedings. See Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) ("[w]hen an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (citation and internal quotations omitted); see also Garrison v. Colvin, 759 F.3d 995, 1021 (9th Cir. 2014) ("further proceedings [are appropriate] when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled").

On remand, the ALJ should reassess Ms. Brown's physical and mental impairments and, if necessary, reformulate the RFC. In regard to the latter, if weight is given to Dr. Brett's report, the terms "awkward" and "stationary" should be translated and defined into more distinct work-

[5] Ms. Brown did not show up for her next scheduled physical therapy appointment, such that she was "[d]ischarge[d] from care" after one session. Tr. 653.

related limitations of function. The ALJ should then continue on to steps four and five of the sequential evaluation process.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

DATED this 13 day of November, 2014.

Marco Hernandez

Marco A. Hernandez
United States District Judge